**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**FILED**

June 8, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**RIGOBERTO RODRIGUEZ,**
**Claimant Below, Petitioner**

**vs.)    No. 16-0705** (BOR Appeal No. 2050974)
                    (Claim No. 2008018382)

**JOHN BELL COMPANY, INC.,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Rigoberto Rodriguez, by Gregory S. Prudich, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. John Bell Company, Inc., by Bradley A. Crouser, its attorney, filed a timely response.

The issue on appeal is whether unspecified internal derangement of the right knee, complex regional pain syndrome, and non-allopathic lesions of the lower extremity are compensable conditions of the claim. The claims administrator denied all the above mentioned conditions on February 12, 2015. The Office of Judges modified the claims administrator's decision on December 1, 2015, and added internal derangement of the right knee to the claim. The Board of Review affirmed the Order of the Office of Judges on June 27, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Rodriguez, a stone mason for John Bell Company, Inc., injured his knee at work on October 29, 2007. Prior to his injury, in 2001, an x-ray of his knee showed early degenerative changes of the medial compartment. He was also treated for knee pain in 2005. On October 31, 2007, Mr. Rodriguez was seen by Z. Comeaux, D.O., for right knee pain. Dr. Comeaux

1

diagnosed a knee strain and possible medial collateral ligament strain or tear. Dr. Comeaux recommended crutches and that Mr. Rodriguez remain off work until revaluation. A report of injury was filed.

The claims administrator held the claim compensable for a right knee sprain on November 6, 2007. A November 29, 2007, MRI of the right knee revealed a probable right anterior cruciate ligament tear and a small medial meniscus tear. On February 26, 2009, Mr. Rodriguez underwent a diagnostic and operative arthroscopy of the right knee with partial and lateral meniscectomy, resection, medial pathologic plica, and chondroplasty of the distal femur intercondylar notch, performed by Steven Vess, D.O. Rebecca Thaxton, M.D., completed a physician review on November 4, 2009, which addressed Mr. Rodriguez's request for the authorization of an anterior cruciate ligament reconstruction with hamstring autograft. Dr. Thaxton recommended the claim administrator approve the surgery. Dr. Thaxton noted that Mr. Rodriguez had persistent symptoms following his February 26, 2009, right knee surgery. Mr. Rodriguez then received a second opinion by Dr. Diduch at the University of Virginia who read Mr. Rodriguez's November 29, 2007, MRI as showing a right knee anterior cruciate ligament tear.

On November 10, 2009, Mr. Rodriguez underwent a right knee arthroscopically assisted anterior cruciate ligament reconstruction using hamstring autograft performed by Dr. Diduch. The preoperative diagnosis was a right knee anterior cruciate ligament tear. The postoperative diagnosis was a right knee anterior cruciate ligament tear with mild grade II chondromalacia of the trochlea and the medial femoral condyle. After the surgery, in May of 2010, Mr. Rodriguez underwent a functional capacity evaluation. His physical capabilities did not match his job requirements of performing heavy work as a stonemason. The evaluator indicated that Mr. Rodriguez may continue to recover and that he should undergo work conditioning.

Mr. Rodriguez underwent a second functional capacity evaluation on July 26, 2010, which resulted in a recommendation that he either find alternative work or retraining. The evaluator stated Mr. Rodriguez showed an ability to work at the light to medium functional capacity level. On November 4, 2010, Joseph Grady, M.D., performed an independent medical evaluation. Dr. Grady stated the compensable conditions were a tear of the lateral cartilage or meniscus of the right knee, tear of the medial cartilage or meniscus of the right knee, and a sprain/strain of the right knee/leg. Dr. Grady diagnosed status post right knee arthroscopic partial medial and lateral meniscectomies with chondroplasty and anterior cruciate ligament reconstruction. Dr. Grady believed Mr. Rodriguez was at maximum medical improvement and stated he observed no ligamentous instability of the right knee upon examination today.

Mr. Rodriguez testified in a deposition on May 4, 2011, that he injured his right knee while performing his job duties of a supervisor stonemason. At the time of his deposition, Mr. Rodriguez stated that he had chronic right knee pain every day which was more severe in the morning. Mr. Rodriguez testified that lifting heavy objects causes his knees to buckle. Mr. Rodriguez described a previous left knee injury which occurred in 2001. He stated that he twisted his left knee when he stepped in a hole. A workers' compensation claim was made and

accepted for the left knee. Mr. Rodriguez testified that the injury to his left knee and the injury at issue to his right knee were his only injuries.

On October 19, 2011, Saghir Mir, M.D., performed an independent medical evaluation. Dr. Mir stated that he did not see any signs of complex regional pain syndrome in his opposite left leg. Dr. Mir said Mr. Rodriguez walked with a limp on the right, but that he did not observe any effusion of the right knee, though there was slight fullness in the right knee. Dr. Mir stated Mr. Rodriguez had very slight laxity of the anterior cruciate ligament and signs of naturally occurring malalignment of the kneecaps. Dr. Mir stated Mr. Rodriguez sustained an injury to his right knee superimposed on very mild early degenerative changes in the medial compartment. He diagnosed status post partial medial and lateral meniscectomy of the right knee and status post anterior cruciate ligament reconstruction. Dr. Mir believed Mr. Rodriguez was at maximum medical improvement.

Dr. Garlitz, Mr. Rodriguez's family medicine practitioner, was deposed on March 8, 2012. Dr. Garlitz testified about the injury, his surgeries, and subsequent medical treatment. Dr. Garlitz stated Mr. Rodriguez never had a resolution of his right knee symptoms. He was concerned Mr. Rodriguez may be developing complex regional pain syndrome, which he related to the compensable injury. Dr. Garlitz stated Mr. Rodriguez's knee muscles are now small and weak, which further aggravates his symptoms. On March 14, 2012, Prasadarao Mukkamala, M.D., completed a record review. He agreed that Mr. Rodriguez was at maximum medical improvement and required no further treatment. Dr. Mukkamala stated that any treatment Mr. Rodriguez needed was due to an intervening injury.

On May 16, 2012, Dr. Mukkamala was deposed. He stated that he believed the only compensable diagnosis was a right knee sprain. However, the claims administrator accepted the partial meniscectomy and anterior cruciate ligament repair surgeries. Dr. Mukkamala did not believe Mr. Rodriguez's surgeries were related to the compensable injury. However, he did say that some patients who undergo similar procedures have continued knee symptoms. Upon cross-examination, Dr. Mukkamala admitted Mr. Rodriguez did not reinjure his knee while roofing, but that he developed pain in the right knee. Mr. Rodriguez was seen by Wassim Saikali, M.D., a rheumatologist on August 30, 2012. According to Dr. Saikali, Mr. Rodriguez rated his pain at an eight on the pain scale, and Mr. Rodriguez was significantly impaired. Dr. Saikali noted Mr. Rodriguez's hands, wrists, shoulders, knees, and ankles were swollen and tender. Dr. Saikali diagnosed active aggressive rheumatoid arthritis and recommended Mr. Rodriguez undergo blood testing.

Mr. Rodriguez saw Dr. Garlitz for knee pain in April of 2013. Dr. Garlitz stated Mr. Rodriguez had decreased range of motion in both knees with crepitus. Mr. Rodriguez's right knee was tender. Dr. Garlitz diagnosed chronic internal derangement of the knee and complex regional pain syndrome of the lower limb. On April 19, 2013, an MRI of Mr. Rodriguez's right knee showed the cruciate ligaments intact; however, there was thinning of the mid-to-posterior horn of the medial meniscus. This should correlate with the surgery. The MRI also revealed a mild thinning of the articular cartilage of the patella consistent with some degenerative-type thinning. Mr. Rodriguez was diagnosed with postsurgical change versus meniscal tear involving

the medial meniscus and a Baker's cyst. An x-ray of Mr. Rodriguez's right knee showed mild degenerative changes.

On April 10, 2014, Mr. Rodriguez saw Dr. Garlitz for increased right knee pain. Dr. Garlitz diagnosed chronic internal derangement of the knee, somatic dysfunction of the lower extremities, and contact dermatitis. Dr. Garlitz was concerned Mr. Rodriguez had osteopenia of the fibular head and recommended an MRI to rule out a fracture. On November 13, 2014, Dr. Garlitz completed a diagnosis update form requesting that internal derangement of the knee, complex regional pain syndrome, and somatic dysfunction of the lower extremities be added as secondary conditions in this claim.

Dr. Thaxton completed a physician's review on December 4, 2014, regarding Mr. Rodriguez's authorization request to add chronic internal derangement of the knee, complex regional pain syndrome, and somatic dysfunction of the lower extremity as secondary conditions. Dr. Thaxton recommended the claims administrator deny Mr. Rodriguez's request. She said Mr. Rodriguez was found to be at maximum medical improvement. She noted that Mr. Rodriguez was undergoing treatment for rheumatoid arthritis. Dr. Thaxton also stated Mr. Rodriguez provided no diagnostic testing to support his request to add chronic regional pain syndrome. She also stated that adding chronic internal derangement of the left knee was not necessary because Mr. Rodriguez already had specific medial and lateral meniscal tears as diagnoses in this claim, which were identified and treated. On February 12, 2015, the claims administrator denied Mr. Rodriguez's authorization request to add unspecified internal derangement of the right knee, complex regional pain syndrome of the lower limb, and nonallopathic lesions of the lower extremity.

On May 8, 2015, Mr. Rodriguez testified in a deposition to ongoing severe and chronic right knee pain that impacts his activities of daily living. Mr. Rodriguez testified that he took physical therapy which increased the right knee symptoms. Mr. Rodriguez also testified that he is a candidate for a third right knee surgery; however, he is unsure whether he wants to undergo another procedure. Mr. Rodriguez testified that he takes Aleve for pain.

The Office of Judges found that internal derangement of the right knee was a compensable condition of the claim. The Office of Judges found that the only Order submitted that recognized compensable conditions was the November 6, 2007, Order recognizing a right knee sprain as the compensable condition. The Office of Judges concluded that the employer also recognized the torn menisci and anterior cruciate ligament as conditions related to the compensable injury; however, no evidence was submitted indicating that a torn meniscus or a torn anterior cruciate ligament were officially added as secondary conditions. The Office of Judges noted that Dr. Mir and Dr. Grady did not emphasize preexisting conditions in their medical evaluations, and they did not apportion impairment for preexisting conditions. Mr. Rodriguez had no prior injuries to his right knee and evidence of only mild degenerative changes prior to the compensable injury. After the compensable injury, Mr. Rodriguez underwent two surgeries to his right knee, and he now suffers from chronic right knee symptoms. In addition, the April 19, 2013, MRI showed a Baker's cyst, thinning of the mid-to-posterior horn of the

4

medial meniscus, and mild thinning of the articular cartilage of the patella, which was consistent with internal derangement.

The Office of Judges found that there was not enough evidence to show that complex regional pain syndrome of the lower limb and somatic dysfunction of the lower extremity were secondary conditions in this claim. The Office of Judges noted that Mr. Rodriguez suffers from rheumatoid arthritis that Dr. Saikali characterized as requiring the use of a wheelchair for a period of time. Dr. Saikali stated Mr. Rodriguez's overall pain complaints decreased after using the arthritis medication Enbrel. The Office of Judges determined that Dr. Garlitz did not provide enough information to find complex regional syndrome as a compensable condition. The Office of Judges also found that Dr. Garlitz did not describe the symptoms of somatic dysfunction of the lower extremity and how it was related to Mr. Rodriguez's symptoms. Because there was inadequate evidence and possible alternative explanations of Mr. Rodriguez's symptoms for both the conditions, the Office of Judges refused to find that complex regional pain syndrome of the lower limb and somatic dysfunction of the lower limb were compensable diagnoses in this claim. The Board of Review adopted the findings of the Office of Judges and affirmed its Order on June 27, 2016.

We agree with the decision of the Office of Judges as affirmed by the Board of Review. In relation to the internal derangement of the right knee, there is ample evidence to find it was caused by the compensable injury and subsequent treatment. Scans taken prior to the injury showed mild degenerative changes and after the injury the scans were interpreted as being consistent with internal derangement. The reports of the physicians of record also show that there was no pre-existing impairment. In relation to the complex reginal pain syndrome and somatic dysfunction of the lower leg, the diagnosing physician did not explain how Mr. Rodriguez's symptoms were connected to the compensable injury. Because there was not sufficient evidence to show that these conditions were caused by the compensable injury, it was appropriate for the Office of Judges and Board of Review to deny them.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 8, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker